IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONNIE HAROLD McSWEEN,        )
                              )
            Plaintiff,        )
                              )
      v.                      )   CIVIL ACTION NO. 1:12cv517-CSC
                              )            (WO)
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
                              )
            Defendant.        )

## MEMORANDUM OPINION

## I.  Introduction

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act,  42 U.S.C. §§ 401, *et seq*., alleging that he was unable to work because of a

disability.  His application was denied at the initial administrative level.  The plaintiff then

requested and received a hearing before an Administrative Law Judge ("ALJ").  Following

the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent

request for review.  The ALJ's decision consequently became the final decision of the

Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131

(11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405

(g) and 1383(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties

have consented to entry of final judgment by the United States Magistrate Judge.  Based on

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

the court's review of the record in this case and the briefs of the parties, the court concludes

that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. The plaintiff was 54 years old on the date he applied for benefits (R. 82) and 55 years old at the time of the hearing before the ALJ. (R. 39). He graduated high school and obtained some vocational schooling. (*Id*.). Following the administrative hearing, the ALJ concluded that the plaintiff has the following severe impairments: "status post cerebrovascular accident, coronary artery disease, hypertension, diabetes mellitus, status post repair of rotator cuff tear, right bicep tendinitis, cervical disc protrusion, osteoarthritis, and major depressive disorder." (R. 14). The ALJ determined that "the claimant has the

3

residual functional capacity perform medium work as defined in 20 CFR 404.1567(c)[,]"

with the following limitations:

> The claimant can lift and carry 50 pounds occasionally and 25 pounds
> frequently, but should not push/pull using the left upper extremity except as
> needed for reaching.  He should not perform overhead reaching with the right
> upper extremity.  He should never climb ladders, ropes, or scaffolds.  He could
> only occasionally perform crouching or kneeling, but no crawling.  He is
> limited to short, simple instructions.  Finally, limits in concentration and pace
> would cause claimant to be off task or at an unproductive pace for 5% of the
> workday.

(R. 19).  The ALJ next found that plaintiff was unable to perform his past relevant work as

an "extruder operator."  (R. 26-27).  However, based upon the testimony of a vocational

expert, the ALJ concluded that, given plaintiff's RFC, there are a significant number of jobs

in the national economy which he can perform.  (R. 27-28).  Representative occupations

identified by the expert and cited by the ALJ include "Hand Packager," "Laundry Worker II,"

and "Porter, Used Car Lot."  (R. 28).  Accordingly, the ALJ held that plaintiff was not

disabled from the alleged onset of disability through the date of the decision.  (*Id.*).

> **B. Plaintiff's Claims**.  Plaintiff presents the following issues for the Court's review:

> 1.   Whether the ALJ's finding of Mr. McSween's residual functional
>      capacity is inconsistent with her acceptance of the FCE.

> 2.   Whether the ALJ failed to properly evaluate the claimant's RFC in light
>      of all of the evidence.

> 3.   Whether the ALJ erred by failing to base her credibility finding on
>      substantial evidence.

> 4.   Whether new and material evidence submitted to the Appeals Council
>      warrants remand.

(Doc. # 13, Pl.'s Br. at 1).

## IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends; and (4) the claimant's age, education, and work history.  *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).  Within this analytical framework, the court will address the plaintiff's claims.

**A.  Residual Functional Capacity ("RFC") Assessment**.  The plaintiff first argues that the ALJ improperly assessed his RFC because her "finding that Mr. McSween can lift and carry 50 pounds is inconsistent with her assignment of great weight to the functional

capacity evaluation ('FCE'), which indicated Mr. McSween could only carry up to 40 pounds." (Doc. # 13, Pl.'s Br. at 3).  Thus, he contends, "the ALJ's decision is not based on substantial evidence because the FCE, which the ALJ assigned great weight, includes more restrictions and more limitations than the ALJ's finding of Mr. McSween's RFC, and the ALJ failed to discredit those restrictions." (*Id.* at 4).

In the context of exertional requirements, the definition of medium work, as set forth at 20 C.F.R. § 404.1567(c), includes all of the exertional demands of light and sedentary work and furthermore "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." In finding that plaintiff may perform medium work, the ALJ stated that plaintiff "can lift and carry 50 pounds occasionally and 25 pounds frequently . . . ." (R. 19).  The ALJ explicitly relied upon a FCE which "noted as evident his ability to lift and carry between 25-40 pounds on an occasional basis." (R. 22). This FCE, which the ALJ "afforded great weight," was performed on February 18, 2009 (R. 489), and is part of a larger exhibit which also includes a subsequent FCE performed by the same office on May 11, 2009.  The subsequent FCE indicates that plaintiff is capable of medium work, as "evident by his ability to lift and carry between 26-50 pounds on an occasional basis." (*Id.* at 485).  In particular, the examiner observed that plaintiff can "back lift" fifty pounds occasionally and "two hand carry" forty pounds occasionally. (*Id.* at 487). It appears plaintiff is therefore asserting that the ALJ's RFC finding is not supported by substantial evidence because she found that plaintiff can "lift and carry 50 pounds

6

occasionally" while one of the FCEs upon which the ALJ relied states only that plaintiff can lift fifty pounds occasionally and carry 40 pounds occasionally.

Plaintiff's claim is without merit. To begin with, substantial evidence–consisting of, *inter alia*, the functional capacity evaluations relied upon by the ALJ–supports her finding that plaintiff retains the RFC to perform medium work. The latter evaluation explicitly states that plaintiff has the "ability to lift and carry between 26-50 pounds on an occasional basis." (R. 485). Moreover, because the exertional requirements of medium work do not even include the express ability to occasionally carry fifty pounds, *see* 20 C.F.R. § 404.1567(c), any purported discrepancy between the ALJ's and FCE's findings regarding plaintiff's ability to carry fifty pounds, an amount of weight which he does not dispute he can lift, is immaterial. As for the ability to "carry" lifted weight, the regulations only require that a claimant be able to frequently lift or carry "objects weighing up to 25 pounds." (*Id.*) Plaintiff does not contend that the ALJ incorrectly determined that he is capable of that level of exertion based upon the evidence in the record.

Finally, the ALJ's hypothetical to the vocational expert concerned a person "limited to the performance of medium duty work as that term is defined by the Social Security regulations" (R. 62), not a person capable of both lifting and carrying fifty pounds occasionally. Because the Social Security regulations state only that medium work entails "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," § 404.1567(c), the ALJ's ultimate finding that there are

significant numbers of jobs in the national economy available to plaintiff is not affected by any asserted discrepancy between the ALJ's RFC findings and those of the FCEs upon which she relied.  The ALJ's RFC determination is supported by substantial evidence and the ALJ was not required to discredit any aspect of the FCEs, upon which she relied in articulating plaintiff's RFC.

Plaintiff next contends that the ALJ failed to properly credit the opinion of his treating physician in assessing his RFC.  (Doc. # 13, Pl.'s Br. at 6).  On March 2, 2009, plaintiff's treating orthopedic physician, Dr. Baker, stated in treatment notes that, due to plaintiff's "continued symptoms, he disagreed with the finding in plaintiff's recent FCE that he is fit for medium work.  (R. 729).  In addition, on June 23, 2010, Dr. Baker "recommended restrictions today for work sedentary to waist only."  (R. 708).  However, between these two dates, on May 1, 2009, Dr. Baker concurred with the FCE's conclusion that plaintiff is fit for medium duty.  (R. 723).  The ALJ repeatedly recognized the opinion evidence of plaintiff's treating physician.  *See* R. 22 ("While one of his treating sources was hesitant to return him to work in March 2009, but returned the claimant to work as of May 2009."); *id.* ("The claimant's treating orthopedist Dr. Baker released the claimant for work during the relevant period, and had a functional capacities evaluation that found him to be fit for medium duty.").  The ALJ afforded Dr. Baker's opinions some weight, but limited his deference in light of other evidence in the record: "Evaluated as opinion evidence from a treating medical source and specialist in the field of orthopedics, this assessment is well supported by the

objective medical evidence and afforded good weight but subject to the objective medical evidence made available subsequent to this assessment supporting differing degrees of limitations to the use of the upper extremities." (R. 22-23).

The Plaintiff further argues that the ALJ afforded insufficient weight to his treating physician's opinion because she "considered his opinion subject to other objective medical evidence made subsequent to the assessment . . . [but] fails to discuss what subsequent evidence, if any, would contradict the opinion of the claimant's treating doctor." (Doc. # 13, Pl.'s Br. at 6.)   In general, the ALJ must give substantial weight to the opinion of a treating physician unless "good cause" is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir.2004).   "'Good cause' exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*   When the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons for doing so, and those reasons must be substantially supported by the evidence. *See id.*

In the first instance, it is not clear to the court that the ALJ actually rejected any opinion of plaintiff's treating physician.  To the extent Dr. Baker opined about limitations referenced in treatment notes from March of 2009, in which he disagreed that plaintiff was fit for medium duty (R. 729), such observations are mitigated by Dr. Baker's subsequent conclusion in May of 2009 that plaintiff could perform medium work "at the shoulder level

9

only based on mild residual external rotation weakness." (R. 723).  To the extent Dr. Baker opined in June of 2010 that plaintiff was restricted "today for work sedentary to waist only" due to shoulder surgery in May of 2010, the ALJ properly observed that Dr. Baker's limitations were not thought to be permanent, and that further improvement was expected. *See* R. 23 ("In June of 2010 Dr. Baker indicated that the claimant would be expected to have maximum medical improvement for the surgical procedure within eight weeks.  While assessed with limitations in functioning in the months following surgical intervention, the evidence fails to support a conclusion that the claimant's limitations would be permanent, and considering the expected improvement in the claimant's condition the evidence is inconsistent with ongoing and consistent debilitating levels of limitations.").  Indeed, the ALJ's finding in this regard is borne out by evidence submitted to the Appeals Council after the ALJ issued her decision.  In plaintiff's follow-up visit with Dr. Baker, on September 3, 2010, Dr. Baker opined that plaintiff had reached maximum medical improvement and stated that plaintiff "is medium duty for restrictions he had before, shoulder-level only." (R. 796.) Hence, plaintiff was essentially assessed the same limitations by Dr. Baker that existed in May of 2009, even after Dr. Baker's intervening opinion in June of 2010.

To the extent the ALJ did in fact reject any of the opinion evidence of Dr. Baker, the ALJ explicitly found that Dr. Baker's records are so inconsistent that his opinion, in some instances, is not supported by his own records.  *See* R. 25-26 (noting fact that Dr. Baker's May 1, 2009, release of plaintiff for medium duty at the "shoulder level only" was

inconsistent with the Visit Status Report evaluation conducted that same day, which indicated that plaintiff could perform medium work, but that all tasks were done at only the waist level). For the ALJ, these "internal inconsistencies" warranted "comparison with other objective medical evidence, which supports a higher level of functioning than alleged." (R. 26). Accordingly, even to the extent the ALJ can fairly be said to have rejected the opinion of plaintiff's treating physician, the ALJ's rejection was supported by "good cause."

Plaintiff next contends that the ALJ "failed to mention, let alone weigh the evidence of the physical RFC assessment of the claimant dated August 12, 2009." (Doc. # 13, Pl.'s Br. at 7.) Plaintiff argues that this particular RFC assessment "is much more limiting than the ALJ's RFC assessment . . . ." (*Id.*) In the August 2009, state agency Physical Residual Functional Capacity Assessment (R. 74-82), the "Single Decision Maker" (SDM) who completed the form assessed plaintiff with the following exertional limitations: occasional lifting or carrying of twenty pounds; frequent lifting or carrying of ten pounds; standing or walking for about six hours in an eight hour workday; sitting about six hours in an eight hour workday; and unlimited pushing or pulling. (R. 75.) It appears the assessment was ostensibly based upon the then available medical evidence in the record, not an independent examination of plaintiff. (R. 75-76.) As to the specific prior FCEs which found plaintiff capable of greater exertional requirements, the SDM only remarked "some weight is given. CL has other medical problems that would further reduce his limitations." (*Id.* at 80).

Plaintiff's reliance on the state agency physical RFC assessment is problematic in

11

several respects.  First, the credentials of the SDM, Phyllis Rinks, are not in the record and the court therefore is unable to judge whether Rinks is qualified to determine plaintiff's exertional limitations, or how much weight is due her opinion based merely upon her review of medical records.  See, e.g., Hare v. Astrue, 2012 WL 3854647, *6 (N.D. AL. Aug. 31, 2012).  Second, Rinks does not explain, specifically, what "other medical problems" "reduce [plaintiff's] limitations" beyond those apparent or already known to the examiners whose prior RFC assessments led plaintiff's treating physician to release him for medium duty with some limitations.  In any event, it is exclusively the duty of the ALJ to determine plaintiff's RFC, based upon all of the available medical evidence.  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)).  In this case, the ALJ's opinion reflects a thorough consideration of the medical evidence in the record, not the sort of "broad rejection" for which the failure to refer to the state agency assessment should concern a reviewing court.  Thus, the ALJ's failure to defer to the state agency RFC assessment does not deprive her decision of the support of substantial evidence.

**B. The ALJ's credibility finding.**  Plaintiff argues that the ALJ's "credibility finding is not based on substantial evidence."  (Doc. # 13, Pl.'s Br. at 9.)  "Subjective pain testimony

supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this Circuit, the law is clear; the Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Where the ALJ proceeds to consider the claimant's subjective testimony about pain, the ALJ's decision to reject or discredit such testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992). If the ALJ determines to discredit subjective pain testimony and such testimony is crucial to the claimant's assertion of disability, the ALJ "must articulate specific reasons for questioning the claimant's credibility." *Id.* Or, in the alternative, the record must be obvious as to the credibility finding

reached by the ALJ. *Foote*, 67 F.3d at 1561-62; *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).

After reciting the applicable law and summarizing plaintiff's testimony, the ALJ acknowledged that plaintiff "suffers from some degree of limitations in functioning" but that, in light of the evidence and plaintiff's own testimony about his everyday activities, plaintiff's testimony about the degree of his limitations was not entirely credible. (R. 19-20). *See also* R. 26 ("The claimant's testimony was found to be generally credible in some respects. However, the claimant's subjective statements were insufficient to surmount the objective medical evidence, which supports a higher level of functioning during the relevant period, and as a result were found to be no more than partially persuasive in light of the full record."). Thus, the issue before the court is whether the ALJ's articulated reasons for finding plaintiff's testimony less than fully credible are supported by substantial evidence.

The ALJ's reasoning for only partially crediting plaintiff's testimony is apparent in her decision. In surveying the medical evidence in the record, the ALJ repeatedly notes that, despite plaintiff's apparent limitations stemming from his various impairments, the objective evidence indicates that plaintiff's condition generally improved with treatment and therapy, and that his most severe limitations evidenced in the record were often temporary and in conjunction with his recovery from a recent episode, procedure, or surgery. *See* R. 21 ("Treatment records indicate that while the claimant's shoulder condition imposed a

significant degree of limitation in his capacity to function based on his use of the right upper extremity, but that these limitations were substantially lessened with treatment administered during the relevant period."); R. 22 ("With treatment the claimant's cardiovascular condition has improved, but was considered in combination with the claimant's other impairments in order to fully accommodate the cumulative limitations caused by the claimant's combination of impairments."); R. 23 ("These records further develop the record of fluctuations in the claimant's musculoskeletal impairments, but also reflect substantial improvement in the claimant's condition with the treatment administered."); R. 24 ("The objective medical evidence and accompanying durations of restrictions from significant work activity support periods in which the claimant has been seriously limited in his capacity to function, but are not supported to have persisted through the relevant time period at these levels of severity. Treatment records support substantial improvement in the claimant's symptoms and functional capacity in the periods following surgical intervention and other medical treatment prescribed."); and R. 26 ("While these references to substantially more limiting degrees of functional restrictions made by treating medical sources are numerous, they have been made in limited durations following the claimant's surgical procedures and have not persisted through the relevant period.").

Plaintiff does not appreciably contest the accuracy of these findings by the ALJ based upon her review of the medical record. Rather, plaintiff argues that the ALJ's observation that "persistent attempts by the claimant to obtain relief provides a strong indication of the

15

claimant's symptoms and lends support to the claimant's allegations" (R. 24) somehow undermines her credibility finding.  (Doc. # 13, Pl.'s Br. at 10.)  However, the ALJ's observation about the possible implications of plaintiff's "persistent attempts" to obtain relief tends more to support her finding that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (R. 20).  It does not compel a finding that plaintiff's testimony about his limitations should be fully credited, especially considering the ALJ's repeated observation that plaintiff's condition normally improved after these "persistent attempts" to obtain treatment.  Elsewhere, plaintiff appears to argue that the ALJ's discussion of his "ability to engage in daily activity on an ongoing basis" should not have been used by the ALJ in support of her credibility findings.  (Doc. # 13, Pl.'s Br. at 11).  However, a review of the ALJ's decision indicates that the ALJ's consideration of plaintiff's testimony about his daily activities formed only a small part of her rationale in finding plaintiff less than fully credible.  As stated above, the ALJ thoroughly detailed the objective evidence in the record, specifically noting the many instances in which the severity of plaintiff's impairments and limitations fluctuated and repeatedly appeared to improve with prescribed treatment and therapy.  By comparison, the ALJ's reliance on plaintiff's testimony about his daily activities is slight.  The ALJ simply noted plaintiff's testimony about his capacity for everyday activities including personal care, housework, cooking, shopping, yardwork, and outdoor leisure pursuits like hunting, fishing, and motorcycling.  (R. 25). Ultimately, the ALJ found that plaintiff's "daily activities performed constituted a wide range

of activities making up a retained daily routine despite his impairments was consistent with the less than medium capacity to function as provided by the residual functional capacity." (*Id.*).  While plaintiff's capacity for daily activities is not dispositive of his claim or of the credibility determination, it is certainly an important component of the evidence which the ALJ is entitled to consider in crafting plaintiff's RFC and assessing the credibility of his subjective testimony about his pain.

The objective medical records, coupled with plaintiff's own  testimony, demonstrate that his allegations regarding the extent of his pain were not credible to the extent he alleged. Consequently, the ALJ's reasoning and ultimate conclusion that plaintiff's testimony is inconsistent with the medical record is sufficient to support her credibility determination. Because the ALJ's credibility determination is supported by substantial evidence, it will not be disturbed by the court.

**C.    New Evidence.**  Plaintiff claims that "new and material evidence was submitted to the Appeals Council on April 21, 2011[,]" in which his treating cardiovascular physician opines that he should be "deemed completely and permanently disabled" due to "multiple medical problems."  (Doc. # 13, Pl.'s Br. at 13).  Plaintiff asserts that this "new" opinion evidence conflicts with the ALJ's finding that plaintiff's various heart-related conditions, while severe, are not disabling and that, were it considered by the ALJ, plaintiff would have been found disabled.  (*Id.* at 14).

On March 15, 2011, plaintiff's treating cardiovascular physician, Dr. Aliabadi,

17

authored a letter in which he recounted plaintiff's "history of intra-atrial septal defect" and "mild to moderate established coronary artery disease," both of which had been treated medically, as well as "other medical problems" including "hypertensive cardiovascular disease, dyslipidemia, type 2 diabetes mellitus, rheumatoid arthritis, GERD (gastroesophageal reflux disease) and a history of protein insufficiency for which he is on chronic Coumadin therapy." (R. 787). Due to these "multiple medical problems," Dr. Aliabadi opined that plaintiff should "be deemed completely and permanently disabled." (*Id.*)

Plaintiff submitted Dr. Aliabadi's letter to the Appeals Council during that body's consideration of plaintiff's request for review of the ALJ's decision. Ultimately, the Appeals Council declined to review the decision, and did not specifically address the import or effect of plaintiff's new evidence. (R. 1-3).[4]

In general, a claimant is entitled to present evidence at each stage of the administrative process, including during proceedings before the Appeals Council. Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1261 (11th Cir. 2007). "The Appeals Council must consider new,

---

[4]   There is no dispute that plaintiff submitted Dr. Aliabadi's letter to the Appeals Council and that the letter was made a part of the administrative record. However, in listing the additional exhibits considered by the Appeals Council, the Council failed to specifically identify Dr. Aliabadi's letter. (*See* R. 5, 7). Instead, the Appeals Council described exhibit 46F, Dr. Aliabadi's letter, as "11/04/2010 progress notes of E. Lacour, M.D., of Dothan Medical Associates." (*Id.*) However, the 11/04/2010 progress note of Dr. Lacour is actually located in the record at exhibit 49F, as further reflected on the Appeals Council's Notice and Order (R. 5, 7), and in the actual transcript of administrative proceedings (R. 801). Plaintiff attributes this error to "misidentification" by the Council (Doc. # 13, Pl.'s Br. at 14) and, given the inclusion of Dr. Aliabadi's letter in the record, the court is inclined to agree and conclude that, despite misidentifying the relevant record, the Appeals Council considered Dr. Aliabadi's letter in denying plaintiff's request for review.

18

material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (quoting 20 C.F.R. § 404.970(b)). New evidence presented to the Appeals Council, but not to the ALJ, may be considered by the court to determine whether remand is proper under 42 U.S.C. § 405(g).

> There are two methods of remand under § 405(g)—"sentence four remands" and "sentence six remands." *Ingram*, 496 F.3d at 1261.[] A sentence four remand is appropriate when the claimant submitted new evidence to the Appeals Council, which the Appeals Council did not adequately consider in denying the claimant's request for review. *Id.* at 1268. To obtain a sentence four remand, the claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole. *Id.* at 1266-67.
>
> In contrast, a sentence six remand is appropriate only when the claimant submits evidence for the first time to the district court that might have changed the outcome of the administrative proceeding. *Id.* at 1267-68. To remand under sentence six, the claimant must show the evidence is new and material and was not incorporated into the administrative record for good cause. *Id.* at 1267. New evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir.1987).

*Timmons v. Comm'r of Soc. Sec.*, 2013 WL 3388234, *4-*5 (11th Cir. July 9, 2013) (unpublished decision).

In this case, because plaintiff submitted the "new" evidence for review by the Appeals Council, and it was included in the administrative record, remand can only be appropriate under sentence four if "the Appeals Council did not adequately consider [the evidence] in denying the claimant's request for review" and plaintiff further shows that, "in light of the

19

new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Id.* at *4. Plaintiff therefore argues that Dr. Aliabadi's letter demonstrates that the ALJ's RFC finding is not supported by substantial evidence. (Doc. # 13, Pl's Br. at 13).

The court does not agree. First, the court is not convinced of the letter's relevance or materiality in determining whether the ALJ's decision was supported by substantial evidence.

> The new evidence must relate to the period on or before the date of the administrative law judge's ("ALJ") decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *cf.* 20 C.F.R. §§ 404.970(b), 416.1470(b) (requiring Appeals Council to consider new evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision"). Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review. *See Wilson*, 179 F.3d at 1279.

*Enix v. Commissioner of Soc. Security*, 461 Fed. Appx. 861, 863 (11th Cir. 2012). *See also Carroll v. Social Sec. Admin., Comm'r*, 453 Fed. Appx. 889, 892 (11th Cir. 2011) ("Evidence is irrelevant and immaterial when it relates to a time period after the eligibility determination at issue"); *Smith v. Social Sec. Admin.,* 272 Fed. Appx. 789. 800 (11th Cir. 2008) (evidence must relate to the "period on or before the date of the ALJ's hearing decision"); *Goff v. Comm'r of Social Sec.*, 253 Fed. Appx. 918, 922 (11th Cir. 2007) (evidence must relate back to "relevant time period"); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 220 (11th Cir. 2007) (same). Thus, the court is to review "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the

20

date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999).

Dr. Aliabadi's letter does not indicate precisely when he came to believe plaintiff should be "deemed completely and permanently disabled," or that he believes the purported disability existed during the relevant time period.  There is no indication in the record that Dr. Aliabadi reached this conclusion prior to the ALJ's decision.  If Dr. Aliabadi only reached this conclusion based upon his continued treatment of plaintiff in the months between the ALJ's decision and his letter, then his conclusion is not relevant to the ALJ's decision. *See Wilson*, 179 F.3d at 1279 ("While [physician's] opinion one year later may be relevant to whether a deterioration in [claimant's] condition subsequently entitled her to benefits, it is simply not probative of any issue in this case.").  Nevertheless, because the Appeals Council included Dr. Aliabadi's letter in the record, and therefore implicitly considered it material, the court will assume for present purposes that it is at least relevant and material to judging whether the ALJ's decision is supported by substantial evidence.

That Dr. Aliabadi's letter may be relevant and material, however, does not compel the conclusion that it is entitled to controlling weight.  Most importantly, Dr. Aliabadi's opinion is conclusory.  Dr. Aliabadi fails to explain why plaintiff's "multiple medical problems" render him unable to perform work at the RFC level indicated by the ALJ, much less "completely and permanently disabled."  Dr. Aliabadi does not specify whether any one of plaintiff's particular "problems" renders him disabled or whether, and which of, these "problems" are working in concert to render him disabled.  Rather, Dr. Aliabadi simply notes

plaintiff's various medical conditions, all of which were acknowledged by the ALJ, and concludes that plaintiff is disabled.  Dr. Aliabadi also fails to distinguish, or even address, the other functional capacity evaluations in the record–including those of other treating and consulting physicians–which concluded that plaintiff retains various levels of functionality which would preclude a finding of disability.

Finally, Dr. Aliabadi's own treatment records simply do not evince a "completely and permanently disabled" person.  On February 5, 2009, plaintiff first visited with Dr. Aliabadi upon a referral after he underwent a procedure to close his intra-atrial septal defect.  (R. 343).  Dr. Aliabadi observed no "typical angina" and noted plaintiff's normal blood pressure.  (*Id.*).  Physical examination of plaintiff's cardiovascular functioning was normal: "The patient's rhythm is regular and the rate is normal.  S1 is normal.  S2 has normal physiological splitting.  No gallop sounds are present.  No murmurs are present."  (R. 345).  Dr. Aliabadi indicated plaintiff would "have a 6 month bubble study."  (R. 346).  On August 26, 2009, plaintiff visited Dr. Aliabadi for his six-month follow-up.  Dr. Aliabadi determined that plaintiff's complaint of "occasional" dizziness was "orthostatic," i.e., postural in nature.  (R. 577).  Dr. Aliabadi once again noted essentially normal findings upon physical examination of plaintiff.  (R. 577-78).  Plaintiff returned for his next follow-up on February 25, 2010.  (R. 736).  It does not appear that Dr. Aliabadi observed plaintiff at this visit.  In light of plaintiff's complaints of chest discomfort, the nurse who examined plaintiff recommended a "non-invasive cardiovascular workup" as a precursor to plaintiff's planned second shoulder

22

surgery.  (R. 736-38).  On March 4, 2010, plaintiff underwent a "cardiolite" stress test.  Dr. Aliabadi interpreted the results, explaining that plaintiff "exercised 10 minutes, 30 seconds" pursuant to protocol, and that his "exercise capacity is normal.  EKG response normal."  (R. 742).  Dr. Aliabadi concluded that "[t]he study is clinically negative for typical angina, electrocardiographically the study is negative for ischemia.  The Cardiolite scan itself is normal." (*Id.*)  Dr. Aliabadi therefore cleared plaintiff for his planned shoulder surgery.  (*Id.*) Plaintiff again followed-up with Dr. Aliabadi on August 4, 2010.  Dr. Aliabadi noted plaintiff's continued complaint of "mild dizziness/orthostasis" likely related to postural changes, which is exacerbated by hot weather.  (R. 782).  Plaintiff did not complain of chest discomfort and Dr. Aliabadi found no symptoms of heart failure.  (*Id.*).  Plaintiff's cardiovascular exam was once again normal.  (R. 783).  Plaintiff followed-up after an echocardiogram in January of 2011.  The procedure showed "continued good long-term results" regarding the operation to close plaintiff's intra-atrial septal defect.  (R. 779). Plaintiff complained of mild chest discomfort upon exertion.  (*Id.*).  Cardiovascular examination was once again normal.  (R. 780).  It does not appear that Dr. Aliabadi examined plaintiff at this visit.  (*Id.*).  However, it appears this visit is the last interaction plaintiff had with his treating physician's office before Dr. Aliabadi issued his opinion letter on March 15, 2011.

　　As the preceding review demonstrates, without a more thorough explanation of Dr. Aliabadi's opinion, his conclusion that plaintiff is "completely and permanently disabled"

is inconsistent with the overwhelmingly normal conditions observed and evidenced in Dr. Aliabadi's treatment notes.  Moreover, it is telling that in this portion of his brief plaintiff does not cite to a single medical record–whether Dr. Aliabadi's or otherwise–as corroborative of Dr. Aliabadi's opinion.  Because it is exclusively the Commissioner's duty to determine plaintiff's RFC, and given that other evidence in the record substantially supports the ALJ's RFC findings, her decision remains supported by substantial evidence and it is not likely that Dr. Aliabadi's letter would have altered the ALJ's decision had it been submitted to her.

## V.  Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate final judgment will be entered.

Done this 5th day of February, 2014.


        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

24